Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7363 | **DATE** | 3/7/2001 |
| **CASE TITLE** | Johnny's Ice House vs. Amateur Hockey Assoc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. AHAI is not a "program or activity receiving federal financial assistance," either because of its asserted controlling authority over Illinois high school hockey or because of its exemption from taxation under Section 501(c)(3). It is therefore not subject to Title IX, and its motion to dismiss Count I of the Complaint in its present form is granted. (13-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 08 | |
| | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | | 36 |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| SN | courtroom deputy's initials | 01 MAR -7 PM 3:34 | 3/7/2001 date mailed notice | |
| | | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHNNY'S ICEHOUSE, INC., et al., )
)
Plaintiffs, )
)
v. ) No. 00 C 7363
)
AMATEUR HOCKEY ASSOCIATION OF )
ILLINOIS, et al., )
)
Defendants. )

DOCKETED MAR 0 8 2001

## MEMORANDUM OPINION AND ORDER

Johnny's Icehouse, Inc., Johnny's Chicago Chill Girls Hockey Club, 16 members of the Johnny's Chicago Chill Girls Hockey 15 and Under Team, their parents and their coach (collectively "Johnny's Icehouse") have asserted a number of claims against Amateur Hockey Association of Illinois, Inc. ("AHAI"), its directors (Richard Becker, Jay Cohen, Mike LeBarre, Kevin Mann and Bob Saliba), Central District Representative to USA Hockey Norman Spiegel and Advanced Arenas Inc. In brief the Complaint alleges that defendants discriminated on the basis of sex in the administration and promotion of amateur hockey in Illinois, engaged in monopolistic and anti-competitive behavior, breached their contracts with plaintiffs, engaged in self-dealing and conspired to commit those acts in violation of state and federal law.

AHAI and its cohorts (for convenience referred to here collectively as "AHAI," treated as a singular noun) have moved to dismiss Complaint Count I, which charges it with violating Title

IX of the Education Amendments of 1972, 20 U.S.C. §1681-1683 ("Title IX"). According to AHAI it is not subject to Title IX because it is not a recipient of federal funds. Both sides' counsel have addressed that issue in their respective memoranda.[1] For the reasons set out in this memorandum opinion and order, AHAI's motion is granted in a limited sense.[2]

## Applicable Standard

Because AHAI labels its motion as brought under Fed. R. Civ.

---

[1] It is highly regrettable that AHAI has chosen to include in its memorandum what appear to be some attacks on the motivations of Johnny's Icehouse. To the contrary, everything that has been put before this Court reflects bona fide (and deeply felt) beliefs and motivations on each side of the controversy. There is no room for ad hominem arguments in addressing claims seriously advanced by the set of plaintiffs here, acting through highly responsible counsel (just as the AHAI defendants' counsel are responsible lawyers).

[2] This opinion does not express any view as to the possible applicability of 42 U.S.C. §1983 ("Section 1983") to this action on the ground that AHAI may be held a "state actor"-- an issue that may likely be raised hereafter because the current dispute focuses only on Johnny's Icehouse's present pleading, and because the Supreme Court's new opinion on such a Section 1983 issue in Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 69 U.S.L.W. 4085 (2001), came down only after the parties' memoranda had spoken to the Title IX question. See, e.g., Brentwood Academy, id. at 4090, briefly adverting to the proposition that the schools' receipt of federal program funding, and hence the schools' potential liability under Title IX, is not a ground for rejecting "state actor" status for a private association that regulates interscholastic sports. And it is familiar teaching that the test for a complaint's viability is not the label that a plaintiff may attach to a claim, for the absence of a label or even a wrong label does not control--there are a host of Seventh Circuit cases so holding, and they almost always cite back to the pronouncement in Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992).

P. ("Rule") 12(b)(6), this Court accepts the Complaint's well-pleaded factual allegations as true, while also drawing all reasonable inferences in Johnny's Icehouse's favor (<u>Sherwin Manor Nursing Ctr., Inc. v. McAuliffe</u>, 37 F.3d 1216, 1219 (7th Cir.1994)). Under Rule 12(b)(6) no claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" (<u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984), quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).

## Facts[3]

AHAI is an Illinois not-for-profit corporation qualified for federal tax exemption under 26 U.S.C. §501(c)(3) ("Section 501(c)(3)")(¶9). AHAI was founded in 1975 as a sanctioned affiliate of USA Hockey, Inc. ("USA Hockey"), which has been appointed by Congress pursuant to the Amateur Sports Act as the national governing body for the sport of United States amateur hockey (¶37).

AHAI's mission is to promote and expand amateur hockey in Illinois. To further that mission AHAI sponsors tournaments, provides clinics for players and coaches, facilitates college

---

[3] Because for Rule 12(b)(6) purposes this opinion must credit Johnny's Icehouse's allegations as true, what follows in this section is drawn from the Complaint (cited simply "¶--"). Hence the recital omits "Johnny's Icehouse alleges" or any comparable locution, although this Court has not of course made any findings (as the <u>Facts</u> caption might otherwise suggest).

scholarship assistance to deserving players and establishes a code of ethics applicable to all member teams (¶41). Virtually every organized amateur hockey team and virtually every high school hockey team in Illinois is a member of AHAI. Each member team is subject to AHAI's By-Laws and Rules and Regulations (¶42). There are no other amateur hockey associations in Illinois (¶74).

For high school teams AHAI has established a special committee to establish exclusively applicable rules and procedures, including rules for eligibility, competition and coaching certification (¶¶39, 42, 43). AHAI has the authority to impose discipline on any high school player, coach or team for any rule infraction (¶42). AHAI's High School Committee also organizes all high school related tournaments, including the state tournament (¶42).

Each hockey team and its players and coaches pay membership fees to AHAI (¶49). Members are also required to be registered with and to purchase insurance through USA Hockey (¶75). AHAI reserves the right to void any AHAI member's insurance if that member plays in a game or tournament that includes another team that is not registered with and has not purchased insurance through USA Hockey (¶76).

Johnny's Icehouse, Inc. is an Illinois corporation that operates a state-of-the-art hockey arena just west of downtown

4

Chicago (¶17). Johnny's Chicago Chill Girls Hockey Club consists of two teams: a 19 and Under team and a 15 and Under team. Both teams play out of the Johnny's Icehouse arena. Johnny's Chicago Chill Girls Hockey Club is a member of AHAI, as are each of the 16 members on its 15 and Under team and its coach (¶¶18, 35).

AHAI has nearly 2,500 member teams (¶45). In 1999 approximately 16 of those were girls' 15 and under teams (id.). AHAI comprises two leagues: the boys' league (the Central States Developmental Hockey League) and the girls' league (the Central States Girls Hockey League)(¶46).

AHAI divides the boys' league into three tiers of competitiveness. Tier I (also referred to as the AAA tier) is the most competitive, Tier II is a less competitive level that includes travel teams and Tier III is the developmental or recreational level composed of house leagues (¶47).

AHAI organizes girls' hockey differently. It has authorized two teams--Team Illinois and the Chicago Young Americans--to play at the most competitive level of the Central States Girls Hockey League (¶48). Girls who do not make one of those two teams may play for one of the few all-girls house league teams or may try out for a boys' team (id.). Team Illinois and the Chicago Young Americans used to be designated as AAA teams, but AHAI purportedly eliminated the AAA/Tier I designation for Illinois girls' hockey teams in July 2000 (id.). Earlier in 2000 Johnny's

Chicago Chill 15 and Under team had petitioned AHAI to play in the Central States Girls Hockey League at the AAA level. Although the team has performed successfully against other AAA teams, AHAI voted not to admit Johnny's Chicago Chill 15 and Under team as a AAA team (¶¶62, 64).

For Illinois boy skaters, AHAI has expanded house leagues and sponsored youth tournaments, Learn-to-Skate programs and college nights and has in other ways promoted recreational and competitive hockey, but it has done comparatively little to promote and expand hockey opportunities for girls (¶¶54, 55, 57). As a result the number of girls' hockey teams sponsored, promoted or encouraged by AHAI is less than 1% of the number of boys' teams (¶57). In addition, by contrast with AHAI's formal adoption of By-Laws regulating boys' hockey, it has issued only Rules and Regulations for girls' hockey, a procedure that allowed AHAI to by-pass the notice and comment procedures required to adopt By-Laws--but that has led to uncertainty over the rules applicable to girls-only competition (¶56).

As a sanctioned affiliate of USA Hockey, AHAI is required to follow the USA Hockey rules (¶52). USA Hockey and AHAI have identical equal opportunity policies (¶38):

> [USA Hockey/AHAI] shall provide an equal opportunity to amateur athletes, coaches, trainers, managers, administrators, and officials to participate in amateur athletic competition, without discrimination on the basis of race, color, religion, age, sex, or national origin.

## Title IX

Title IX's §901(a) (20 U.S.C. §1681(a)) provides, with exceptions inapplicable here:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance....

Johnny's Icehouse posits two theories for finding that AHAI is subject to that antidiscrimination rule:

1. Illinois public schools, which are themselves recipients of federal funds, have ceded controlling authority over their hockey programs to AHAI.

2. AHAI's Section 501(c)(3) tax exemption qualifies as "Federal financial assistance."

This opinion addresses each of those arguments in turn.

## "Controlling Authority"

NCAA v. Smith, 525 U.S. 459, 469-70 (1999) has left open the question whether "when a recipient cedes controlling authority over a federally funded program to another entity, the controlling entity is covered by Title IX regardless of whether it is itself a recipient." Some lower courts have held that such controlling authority suffices to make an entity subject to statutes that prohibit discrimination in federally assisted

7

programs.[4] Thus <u>Cureton v. NCAA</u>, 37 F.Supp.2d 687, 696 (E.D. Pa. 1999) found that because member colleges and universities had delegated to the NCAA "the authority to promulgate rules affecting intercollegiate athletics that the members are obligated to abide by and enforce," the NCAA was subject to Title VI irrespective of its own nonreceipt of federal funds. Accord, relying on <u>Cureton</u>, <u>Kemether v. Pennsylvania Interscholastic Athletic Ass'n</u>, 1999 WL 1012957 (E.D. Pa. Nov. 8). And more recently <u>Communities for Equity v. Michigan High Sch. Athletic Ass'n</u>, 80 F.Supp.2d 729, 734 (W.D. Mich. 2000) reasoned that a failure to hold entities with controlling authority over federally funded programs subject to Title IX would thwart the purposes of the statute and amount to "empty formalism":

> If Defendants' interpretation prevailed, Title IX would prohibit "recipients" of federal funds from discriminating on the basis of sex, but would allow entities that controlled those funds to discriminate so long as those

---

[4] This opinion looks to caselaw interpreting both 29 U.S.C. §794, part of the Rehabilitation Act of 1973 ("Rehabilitation Act §504"), and Title VI of the Civil Rights Act of 1964 ("Title VI," 42 U.S.C. §§2000d to 2000d-7) to construe Title IX, for all three statutes prohibit discrimination using substantially the same terms. As stated in <u>Department of Transp. v. Paralyzed Veterans of Am.</u>, 477 U.S. 597, 600 n.4 (1986):

> Title VI is the congressional model for subsequently enacted statutes prohibiting discrimination in federally assisted programs or activities. We have relied on case law interpreting Title VI as generally applicable to later statutes.

And <u>NCAA v. Smith</u>, 525 U.S. at 467-69 looked at caselaw dealing with Rehabilitation Act §504 as an aid to interpreting Title IX.

entities were not themselves recipients. Such a scheme would not only encourage "recipients" of federal funds to transfer control over those funds to others (because both parties would thereby avoid Title IX liability), it would allow federal funds to promote gender discrimination so long as the recipients of those funds empowered someone else to promulgate the discriminatory policies. In this Court's view, such a formalistic interpretation is not warranted by the meaning or purpose of the statute.

But other cases call into serious doubt the propriety of the "controlling authority" theory. Thus, although Cureton v. NCAA ("Cureton II"), 198 F.3d 107, 117-18 (3d Cir. 1999) did not reject that doctrine outright (it reversed the district court on the ground that the evidence did not support a finding that the NCAA "controls" intercollegiate athletics), it took pains to raise substantial questions about the appropriateness of such an approach in most cases. On that score the majority opinion in Cureton II, id. at 118 pointed out that the controlling authority argument "is inconsistent with the contractual character" of Title VI--with the Spending Clause's foundation for that enactment and the consequent contractual basis for imposing its requirements. Paralyzed Veterans, 477 U.S. at 605 explains the contract:

> Under the program specific statutes, Title VI, Title IX, and §504, Congress enters into an arrangement in the nature of a contract with the recipients of the funds: the recipient's acceptance of the funds triggers coverage under the nondiscrimination provision.

Accord as to Title IX, Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 286 (1998).

9

As <u>Cureton II</u>, 198 F.3d at 118 went on to state, because the NCAA is not a party to the contracts between the Departments of Health and Human Services and Education and the universities, it "is not in a position to accept or reject the Federal funds paid to those institutions." That being so, to impose Title VI obligations on the NCAA--or on any other entity not in contractual privity with the federal government or without the power to decide whether or not to accept federal financial assistance--would not fit into the Spending Clause foundation for the statute (<u>id</u>).

Our own Court of Appeals has also raised doubt about the propriety of the controlling authority argument in <u>Smith v. Metropolitan Sch. Dist. Perry Township</u>, 128 F.3d 1014 (7th Cir. 1997). <u>Smith, id</u>. at 1019 held that the appropriate defendant in a private Title IX action is the institution or entity receiving the Federal financial assistance, not an individual acting as an administrator or employee for the institution. <u>Smith</u> based that holding on the fact that administrative enforcement of Title IX is directed at the institution that receives the federal funds (with the ultimate sanction for noncompliance being the termination of federal funding or the denial of future grants). That reasoning comports with the contractual basis for Title IX liability discussed in <u>Cureton II</u> and <u>Paralyzed Veterans</u>: the proper defendant is the entity that breached its contract with

10

the government. And <u>NCAA v. Smith</u>, 525 U.S. at 467 n.5 has similarly confirmed that reading of Title IX:

> Smith suggests that <u>Paralyzed Veterans</u> does not control the question presented here because that case involved a Government enforcement action while this is a private suit. This argument hinges on Smith's position that the private right of action available under 20 U.S.C. §1681(a) is potentially broader than the Government's enforcement authority provided by §1682. We reject this position. There is no express authorization for private lawsuits in Title IX; in <u>Cannon v. University of Chicago</u>, 441 U.S. 677, 717 (1979), we concluded that Congress had intended to authorize a private right of action even though it failed to do so expressly. We think it would be anomalous to assume that Congress intended the implied private right of action to proscribe conduct that Government enforcement may not check.

In much the same vein, AHAI urges that this Court must "follow the money" and find that Title IX applies only to the grant recipient--in this case the high schools, not AHAI. Although the issue is surely debatable (<u>Cureton II</u> evoked a strong dissent in the Title VI context by Judge Theodore McKee, with whom this Court has had the privilege to sit on a Third Circuit panel, urging that evidentiary development was necessary before the possible application of the Spending Clause to the arguable controlling authority could be resolved (198 F.3d at 118-28)), on balance this Court finds that position persuasive. Because AHAI is not itself a recipient of federal financial assistance, there is no action that a federal agency could take to curb its alleged noncompliance. On the strength of the just-discussed majority caselaw, then, AHAI is not an appropriate

11

defendant in this private action.

Indeed, it is worth adding an observation as to the unpersuasiveness of the District Court cases (as contrasted with Judge McKee's dissent in Cureton II) that have reached the opposite conclusion. It does not follow--as Communities for Equity, 80 F.Supp.2d at 734 feared--that Title IX recipients will be able to avoid its anti-discrimination mandate by transferring control over their programs or activities to non-recipient agencies if the "controlling authority" theory is not adopted. As Davis v. Monroe County Bd. of Ed., 526 U.S. 629, 643 (1999) has reaffirmed the holding in Gebser, Title IX liability is predicated on the actions of the funding recipient, not on agency principles. And that being so, a funding recipient may be liable if it fails to respond appropriately to the discriminatory acts of nonagent third parties (id at 643-44; see also 34 C.F.R. §106.31(d) and, e.g., Morlock v. West Cent. Educ. Dist., 46 F.Supp.2d 892, 902 (D. Minn. 1999)).

In sum, because no administrative enforcement action could be taken against AHAI for any discriminatory conduct on its part solely because the high schools have ceded to it controlling authority over their hockey programs, this Court declines to find it subject to Title IX in this private action on that basis. One of the strings to the Johnny's Icehouse Title IX bow is broken-- despite the undeniable potential for a contrary ruling.

## Tax Exemption as Federal Financial Assistance

As stated earlier, Johnny's Icehouse also seeks to invoke Title IX's nondiscrimination requirements on the premise that AHAI's tax-exempt status under Section 501(c)(3) is a form of federal financial assistance. That contention simply does not withstand analysis.

For one thing, here is the comprehensive definition of "federal financial assistance" set out in the Department of Education's regulation (34 C.F.R. §106.2(g)):

> (g) Federal financial assistance means any of the following, when authorized or extended under a law administered by the Department:
>
> (1) A grant or loan of Federal financial assistance, including funds made available for:
>
> (i) The acquisition, construction, renovation, restoration, or repair of a building or facility of any portion thereof; and
>
> (ii) Scholarships, loans, grants, wages or other funds extended to any entity for payment to or on behalf of students admitted to that entity, or extended directly to such students for payment to that entity.
>
> (2) A grant of Federal real or personal property or any interest therein, including surplus property, and the proceeds of the sale or transfer of such property, if the Federal share of the fair market value of the property is not, upon such sale or transfer, properly accounted for to the Federal Government.
>
> (3) Provision of the services of Federal personnel.
>
> (4) Sale or lease of Federal property

13

or any interest therein at nominal
consideration, or at consideration reduced
for the purpose of assisting the recipient or
in recognition of public interest to be
served thereby, or permission to use Federal
property or any interest therein without
consideration.

(5) Any other contract, agreement, or
arrangement which has as one of its purposes the
provision of assistance to any education program
or activity, except a contract of insurance or
guaranty.

What is conspicuously absent from that laundry list is income tax exemption. Though to be sure the possession of such an exemption obviously makes the possessor the "recipient" of a higher net income than if it had to pay taxes, and presumably the beneficiary of more receipts because of the deductibility of its donors' contributions, those benefits--unlike those expressly listed in the Regulation--must be recognized as indirect rather than direct subsidies.

In short, "federal financial assistance" encompasses only direct transfers of federal money, property or services from the government to a program. Exemption from taxation just does not equate to such direct transfers (cf. Paralyzed Veterans, 477 U.S. at 606-07, limiting the scope of Title IX to entities that actually receive federal money, not to those that merely benefit economically from the federal programs that use the money).

Moreover, such a definition of "federal financial assistance" is consistent with the Spending Clause foundation for

14

Title IX. That is, when the government offers to transfer money or property to an entity to support an educational program or activity, the intended recipient has the choice whether or not to accept the assistance and the concomitant obligation not to discriminate on the basis of sex. While Congress may condition tax exempt status on an organization's conforming to the specific categories in Section 501(c)(3)(as discussed in <u>Bob Jones Univ. v. United States</u>, 461 U.S. 574, 585-92 (1983)), that was not the power that Congress invoked to subject entities to the nondiscrimination requirements of Title IX.[5]

So Johnny's Icehouse fails on its second contention as well. AHAI's tax exempt status, without more, is also insufficient to subject it to the antidiscrimination requirements of Title IX.

### Conclusion

AHAI is not a "program or activity receiving federal financial assistance," either because of its asserted controlling authority over Illinois high school hockey or because of its exemption from taxation under Section 501(c)(3). It is therefore not subject to Title IX, and its motion to dismiss Count I of the Complaint in its present form is granted. Again, no view is expressed here as to the possibility of revival of Count I under

---

[5] What has been said here was in large part the basis for a like ruling in the Rehabilitation Act context in <u>Bachman v. American Soc. of Clinical Pathologists</u>, 577 F.Supp. 1257, 1263-65 (D. N.J. 1983).

15

another rubric (see n.2).

_____
Milton I. Shadur
Senior United States District Judge

Date: March 7, 2001