# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7363 | **DATE** | 7/20/2001 |
| **CASE TITLE** | Johnny's IceHouse vs. Amateur Hockey Assn. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for sanctions is granted. This Court therefore orders Morrow to pay the requested sum of $8,918.09 to the firm of Mayer, Brown and Platt so that the letter may in turn credit that amount to its clients. (91-1, 94-1) Respondent's motion for sanctions is treated as a response to Plaintiff's motion and is disposed of by this memorandum opinion and order. (96-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | |
| | No notices required. | JUL 23 2001 | |
| | Notices mailed by judge's staff. | date docketed | 104 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | FILED FOR DOCKETING | |
| | Copy to judge/magistrate judge. | 01 JUL 20 PM 12: 47 | |
| courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUL 2 3 2001

JOHNNY'S ICEHOUSE, INC., et al., )
                                  )
              Plaintiffs,         )
                                  )
    v.                            )   No. 00 C 7363
                                  )
AMATEUR HOCKEY ASSOCIATION OF     )
ILLINOIS, et al.,                 )
                                  )
              Defendants.         )

MEMORANDUM OPINION AND ORDER

At issue here is an offshoot of the litigation in which the principal (although by no means the only) adversaries are Johnny's IceHouse, Inc. ("Johnny's IceHouse") and Amateur Hockey Association of Illinois, Inc. ("AHAI"). Johnny's IceHouse has moved under 28 U.S.C. §1927 ("Section 1927") for sanctions against Stephen Morrow ("Morrow")(in fact all plaintiffs have done so, but "Johnny's IceHouse" will be used here for convenience). That motion stems from the agreement by Morrow, a lawyer acting for nonparty Midwest Elite Hockey League ("League," of which he is Vice-President), that League would be bound by and would comply with this Court's June 4, 2001 memorandum order ("Order," a copy of which is attached), with the difficulty arising from Morrow's indefensible and repeated violations of the Order--violations that in turn forced the Johnny's IceHouse lawyers to expend their time (and hence their clients' money) in several efforts to require Morrow (and League) to do what he (on its behalf) had committed to do in the first instance.

104

Although Morrow had acted alone on League's behalf throughout the course of events giving rise to the current motion, now that his own conduct has been placed in issue for Section 1927 purposes[1] he has retained outside counsel, who has filed a Response to Motion for Sanctions ("Response") on his behalf. With counsel for Johnny's IceHouse now having filed their Reply in Support of Their Motion ("Reply"), the matter is ripe for disposition.

Before Morrow's recent retention of counsel, he had shown himself (despite his training as a lawyer) to be either unwilling to follow, or incapable of following, the express and unambiguous directions that were contained in the written court Order and this Court's contemporaneous oral directive. Now his retained counsel has not improved matters materially, for the Response has in part repeated the level of mischaracterization or misunderstanding that Morrow himself has exhibited.

First, Morrow's counsel provides an inaccurate matrix for the situation that ultimately led to the sanctions motion by stating in Response ¶1:

> Mr. Morrow's involvement in this matter came after the Plaintiffs filed a TRO concerning the establishment of a girls division within the MWEHL. The court denied the plaintiffs TRO. Subsequent to the denial of the

---

[1] Unlike other types of court-imposed sanctions, any sanctions based on Section 1927 run only against lawyers who have violated the statutory standards, not against the clients of those lawyers.

2

> TRO, the Court stated that a disclaimer should be made
> by party defendant Amateur Hockey Association of
> Illinois ("AHAI") and MWEHL regarding the relationship
> between those organizations.

That sequential characterization is just wrong (even though Morrow would no doubt be liable for sanctions even if it were accurate). What happened instead was that this Court imposed the Order's requirements for action to be taken by League as a precondition to this Court's not granting the entry of preliminary injunctive relief (a temporary restraining order ("TRO") sought by Johnny's IceHouse in its Second Emergency Motion for a TRO). That eschewal of the entry of a TRO rested on the premise that an appropriate form of disclaimer by League that would expressly negate a tie-in between League and AHAI could operate to take League out of the category of nonparties that are also made subject to the constraints of a TRO by the terms of Fed. R. Civ. P. ("Rule") 65(d).

It may be noted parenthetically that Morrow raises no question as to the propriety of the Order and its applicability to the League--indeed, Morrow had voiced no objection to the terms of the disclaimer or to the manner in which League was directed to implement it. But it would not have mattered even had he done so. It has long been established that a court order must be complied with so long as it is outstanding, even where it may later be challenged as invalid (see, e.g., the seminal decision in <u>United States v. United Mine Workers</u>, 330 U.S. 258,

3

293 (1947) and such later cases as <u>Maness v. Meyers</u>, 419 U.S. 449, 459 (1974), both addressing that issue in the related context of a contempt citation). So the question is not whether Morrow <u>should</u> have complied, but rather whether he <u>did</u> comply, with the Order and its accompanying oral directive permitting a modest addition to League's website.

There is another respect in which Morrow's counsel misses the point entirely. In an effort to demonstrate Morrow's asserted good faith, Response ¶¶2 and 3 advert to Morrow's pre-June 4 conduct in having prepared an earlier League statement, the unsatisfactory nature of which then triggered the June 4 hearing. But that is really beside the mark, for it is what Morrow did and failed to do when the path had been clearly marked out for him at the June 4 hearing that has generated both the request for Section 1927 sanctions and the quantification of the amount requested by Johnny's IceHouse. Indeed, Johnny's IceHouse's Motion Ex. 2, which is a highlighted printout of the law firm's time records and other charges, does not begin with any items for which it seeks recovery until the time and expense entries for June <u>11</u>.

As a last observation before this opinion turns to the substantive merits, Johnny's IceHouse's Reply is accurate in stating in its Introduction (Reply at 1) what Morrow has and has not placed in issue. Here is that brief summary of the issue

4

involved, as well as those nonissues:

> Morrow's sole response to plaintiffs' motion for sanctions is that he fully complied with the Court's June 4 Order. He does not dispute the reasonableness of plaintiffs' fees and costs. He does not challenge the number of attorney hours, the hourly rates applied or the reasonableness of each item of expense. He also does not deny that he is an attorney and thereby subject to sanctions under 28 U.S.C. §1927.

At last, then, this Court addresses the issue of Morrow's compliance or noncompliance with this Court's Order, the course of conduct that in Section 1927 terms "multiplie[d] the proceedings in [this] case unreasonably and vexatiously." In that respect Response ¶7 again distorts the record as to the Order by saying "the order was silent as to the specific sequence of where the Court language would be laid out." Exactly the opposite is true: Instead the Order, in express terms that Morrow's lawyer ignores entirely, specifically ordered League to delete the complex and confusing (to any layperson) language that previously had on its website and to substitute in its place the accompanying Court-ordered language.

Under the Order's directive the Court-ordered language would either exist on the website alone or, if League so elected as discussed in the next paragraph of this opinion, it might be followed by a brief supplemental statement (not of the type that the Order had said must be deleted). Yet Morrow inexplicably retained the language that had created the problem to begin with, while inserting the Court-ordered language after that confusing

5

statement. That action perpetuated the problem that had compelled Johnny's IceHouse to seek a TRO in the first place, and that noncompliance on Morrow's part must be viewed as a direct flouting of the plain language of the written court Order.

It is true but quite irrelevant that during the in-court proceedings on June 4, this Court had responded to the concerns raised by Morrow that a website statement that limited itself to speaking of the Illinois teams that were League members, while being silent as to the teams that were organized in other states and that were also League members, might itself be the source of confusion. That led this Court to say during the June 4 hearing that if League so wished it could <u>follow</u> the Court-directed language with a brief statement that League's posture vis-a-vis other states was of the same nature as (or, in the case of Michigan, was somewhat different from) the described relationship as to Illinois. But that permitted insertion in no way altered the express priority that this Court specified in the Order, and it certainly did not by any stretch of the imagination authorize what Morrow had done instead.

What has just been said was really compounded by Morrow's repeated failure to comply again and again, despite several trips back to the courthouse, with what had been so plainly directed the first time around. And it does not matter for Section 1927 purposes whether or not that noncompliance reflected subjectively

wilful disobedience on Morrow's part. It has been plain for at least 15 years that the applicable standard in determining Section 1927 liability is not that of subjective bad faith, but is instead one of objective content, such as "acting recklessly or with indifference to the law" (In re TCI Ltd., 769 F.2d 441, 445 (7th Cir. 1985))--and that analysis has been reconfirmed many times since then, as in Kotsilieris v. Chalmers, 966 F.2d 1181, 1185 (7th Cir. 1992):

> Under the current state of the law, something more than ordinary negligence must exist in order to justify the order of sanctions. Nonetheless, the fact that ordinary negligence fails to meet the bad faith test does not mean that extraordinary or extreme negligence also fails. To the contrary, we have held that the bad faith standard has an objective component, and extremely negligent conduct, like reckless and indifferent conduct, satisfies this standard.

In short, the thrust of the Section 1927 caselaw in situations such as this mirrors the Rule 11 principle colorfully expressed in such cases as Thornton v. Wahl, 787 F.2d 1151, 1154 (7th Cir. 1986):

An empty head but a pure heart is no defense.

That characterization (perhaps understandably, given its imagery) has received substantial judicial repetition and approbation, including for example in Burda v. M. Ecker Co., 2 F.3d 769, 775 (7th Cir. 1993)--a decision singled out here only because it confirmed the imposition of sanctions under both Rule 11 and Section 1927.

7

In sum, nothing contained in Morrow's Response either justifies or excuses his repeated violations of an unambiguous court order. It is equally clear that, in the objective sense taught by Section 1927 and Seventh Circuit caselaw, those violations indeed "multiplie[d] the proceedings in [this] case unreasonably and vexatiously" and forced Johnny's IceHouse's counsel to expend the time and expenses for which they now seek to hold Morrow responsible. No reason exists why innocent victim Johnny's IceHouse, rather than wrongdoer Morrow, should bear the cost of that incremental and otherwise unnecessary activity. This Court therefore orders Morrow to pay the requested sum of $8,918.09 to the firm of Mayer, Brown & Platt so that the latter may in turn credit that amount to its clients.

                                               */s/ Milton I. Shadur*
                                               Milton I. Shadur
                                               Senior United States District Judge

Date: July 20, 2001